UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIAGO JONES, #864511,

    Petitioner,                                          Civil Action No. 18-CV-12231

vs.                                                   HON. BERNARD A. FRIEDMAN

THOMAS WINN,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree felony murder, MICH. COMP. LAWS § 750.316, torture, MICH. COMP. LAWS § 750.85, and second-degree home invasion, MICH. COMP. LAWS § 750.110a(3), following a jury trial in Wayne County Circuit Court. In 2015, he was sentenced, as a second-habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of life imprisonment without the possibility of parole, 10 to 15 years imprisonment, and 5 to 20 years imprisonment on those convictions, respectively. He raises claims concerning the admission of evidence and the sufficiency of the evidence. For the reasons stated below, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies petitioner leave to proceed in forma pauperis on appeal.

**I.    Facts and Procedural History**

Petitioner's convictions arise from his participation in the beating death and home burglary of Louis Norris in 2014. Petitioner was jointly tried before separate juries with co-

defendants Taranda Carson Jr. and Mary Lynell Pye. The Michigan Court of Appeals described the relevant facts as follows:

> Late in the evening of June 23, 2014, Dominque Reynolds asked her neighbor, Norris, to watch her 11–year–old son, DR, while she visited a friend around the block. At approximately 10 or 11 p.m., Reynolds's sister, Alecia Latimer, arrived at Reynolds's home with a carload of friends, including Pye, Kyle Wilson, Carson, and Jones. Latimer went into the home and spoke with DR. Based on this conversation Latimer believed that Norris had sexually assaulted her nephew. Latimer flew into a rage and Norris retreated to his next door home.
>
> According to Wilson, Latimer acted as the ring leader and encouraged Jones to join her in kicking Norris while Norris sat on his front porch. Reynolds returned home shortly after Latimer's arrival, resulting in a brief pause in the action. Reynolds described that Jones and Carson then attacked Norris, jumping on him and hitting him with fists, a metal folding chair, and a 2 ½-foot rod. Reynolds accused Pye of spraying Norris in the face with an aerosol substance. Jones admitted to police that he struck Norris once, but shifted blame for the attack to Latimer and Carson.
>
> Following the assault, the group decided to burgle Norris's home. At trial, Wilson described that Latimer and young DR entered Norris's house and carried various items to Reynolds's home for storage. Wilson earlier told police that Carson, Jones, and DR were involved in the burglary. Reynolds identified Carson, Jones, and Pye as the thieves.
>
> Police discovered Norris's body on his front porch the following morning. Norris's head was covered in blood and first responders believed he had been shot. Norris's home was also ransacked. Later examination revealed that Norris had actually been killed by multiple blunt blows to his head, one or more of which fractured Norris's spine.
>
> Investigators initially interrogated Latimer and Reynolds and learned the names of the others present on the night in question. After hearing of Latimer's part in the attack and robbery from defendants and Wilson, officers attempted to arrest her as well, but she successfully evaded capture.

> Ultimately, Carson, Jones, and Pye were tried jointly but before separate juries. As noted, the juries convicted Carson and Jones of several charged offenses [and Pye was acquitted].

*People v. Jones*, No. 326760, 2016 WL 5956030, at *1 (Mich. Ct. App. Oct. 13, 2016).

Following his convictions and sentencing, petitioner filed an appeal of right with the Michigan Court of Appeals asserting that the trial court erred in admitting autopsy photographs of the victim and that the prosecution failed to present sufficient evidence to support his convictions. The Michigan Court of Appeals denied relief on those claims and affirmed his convictions and sentences. *Id.* at *2-5. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Jones*, 898 N.W.2d 206 (Mich. 2017).

Petitioner thereafter filed his federal habeas petition raising the same claims presented to the state courts on direct appeal. Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

## II. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review applied in federal habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Section 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). The Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* Thus, in order to obtain federal

4

habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Further, a state court's factual determinations are presumed to be correct on federal habeas review. Section 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  Discussion

#### A.  Admission of Autopsy Photographs

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting autopsy photographs of the victim. Respondent contends that this claim is not cognizable on habeas review and that it lacks merit.

Alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle*, 502 U.S. at 69-70).

The Michigan Court of Appeals considered this evidentiary claim on direct appeal and denied relief. The court explained:

> We review a trial court's decision to admit photographic evidence for an abuse of discretion. *People v. Cervi*, 270 Mich App 603, 625; 717 NW2d 356 (2006). The photos were not inadmissible merely because they vividly depicted Norris's injuries. "Photographs are admissible

if substantially necessary or instructive to show material facts or conditions." *People v. Hoffman*, 205 Mich App 1, 18; 518 NW2d 817 (1994); *see also* MRE 401. Although MRE 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, "[i]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Hoffman*, 205 Mich App at 18. Autopsy photos are considered relevant when they are "instructive in depicting the nature and extent of the victim's injuries." *People v. Flowers*, 222 Mich App 732, 736; 565 NW2d 12 (1997). Whether relevant photographic evidence should be excluded depends on whether its probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. *People v. Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

The challenged autopsy photos were relevant because they depicted the nature and extent of Norris's injuries, confirming that they had been inflicted with fists, feet, and a metal rod. They also promoted the jury's understanding of the medical examiner's explanation of why the first responders believed that Norris had been shot rather than beaten. And displaying the extreme nature of Norris's injuries was helpful in establishing the malicious intent of his attackers.

The few photos that were actually admitted at trial were also not unduly duplicative of the witness descriptions of Norris's condition. "Photographs are not excludable simply because a witness can orally testify about the information contained in the photographs"; they may be admitted "to corroborate a witness's testimony." *Id*. Moreover, the observations of the first responders did not correlate Norris's injuries with his cause of death, or the actual medical nature of the injuries. The photos created a bridge between the testimony of those first responders and the medical examiner and were probative in explaining the disconnect.

Furthermore, photos depicting the nature and extent of Norris's injuries evinced defendants' intent. Intent was a principal issue in this case because the prosecution charged defendants under different murder theories—first-degree felony, first-degree premeditated, and second-degree. Viewing photos of the injuries inflicted was beneficial for the juries to select the level of culpability of each defendant.

> The trial court sought to avoid any potential for unfair prejudice by excluding numerous other autopsy and crime scene photos that it believed were more graphic and gruesome and that would be cumulative of the admitted photos. Moreover, our review of the three photos actually admitted at trial reveals that they are not particularly lurid or vivid as asserted by Jones. One photo shows Norris's face. A large oval wound appears on his cheek, another between his eyelid and eyebrow. A puncture-type wound sits between his eyes. One eye is bruised and swollen. A second full-body picture shows that Norris's wounds were limited to the head area. The third photo shows a gash on the back of Norris's head. All blood was cleaned from Norris in the pictures. The photos are clinical rather than prejudicially inflammatory. Accordingly, the trial court acted within its discretion in admitting them....

*Jones*, 2016 WL 5956030, at *2-3.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that petitioner asserts a violation of the Michigan Rules of Evidence or other state law, he fails to state a claim upon which habeas relief may be granted. As noted, federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 72. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Second, petitioner fails to establish that the admission of the disputed photographs violated his due process rights and denied him a fair trial. The United States Supreme Court has not ruled that the admission of autopsy photographs violates due process. Rather, the Supreme Court has stated that just because a relevant photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. People of the State of Calif.*, 314 U.S. 219, 229 (1941). Moreover, the Sixth Circuit has held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d

7

1027, 1032 (9th Cir. 1997)); *see also Franklin v. Bradshaw*, 695 F.3d 439, 456–57 (6th Cir. 2012) (admission of eighteen autopsy photographs of victims did not render state criminal trial fundamentally unfair).

In this case, the autopsy photographs were relevant and admissible under state law. They depicted the extent, severity, and nature of the victim's injuries and were thus relevant to show how the victim died, as well as the perpetrators' states of mind. They also helped explain why the first responders initially thought that the victim had been shot. Additionally, the trial court limited the number of autopsy (and crime scene) photographs that were shown to the jury and admitted at trial. Given the circumstances, petitioner fails to establish that the admission of the autopsy photographs was erroneous, violated due process, or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### B. Sufficiency of the Evidence

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at

324 n.16, and through the framework of § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Rather, a federal habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id.*

The Michigan Court of Appeals considered this sufficiency of the evidence claim on direct appeal and denied relief. The court explained:

> To establish a felony-murder charge, the prosecution must prove:
>
>> (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*People v. Lane*, 308 Mich App 38, 57–58; 862 NW2d 446 (2014).]
>
> The prosecution argued that Jones was guilty as either a direct participant or an aider and abettor. Aiding and abetting felony murder requires proof that the defendant
>
>> (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily

9

> harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony.
>
> In order to satisfy the malice standard ..., the prosecution must show that the aider and abettor either intended to kill, intended to cause great bodily harm, or wantonly and willfully disregarded the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. Further, if an aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, the aider and abettor is acting with "wanton and willful disregard" sufficient to support a finding of malice. [*People v. Riley* (After Remand), 468 Mich 135, 140–141; 659 NW2d 611 (2003) (citations omitted).]

Jones's principal argument is that because he played a minimal role in the assault, insufficient evidence supported that he acted with the necessary malice. In this regard, Jones relies on his police statement in which he limited his involvement to hitting and kicking Norris once. However, other evidence supports that Jones played a larger role and the jury obviously credited those accounts. Wilson testified that after Latimer hit and kicked Norris repeatedly, Jones jumped in and hit Norris once in the upper body. Reynolds testified that after she arrived on the scene, two men (determined to be Jones and Carson by elimination) "snatched" Norris from his house and began hitting him with their fists. One of the men struck Norris with a metal chair and the other with a 2 ½-foot rod. Reynolds unsuccessfully attempted to pull Jones and Carson off of Norris. According to Reynolds, the men took breaks in their assault of Norris to drink liquor. This evidence, viewed in a light most favorable to the prosecution, sufficed to prove that Jones bore the intent to kill, do great bodily harm, or at least create a high risk of death or great bodily harm.

Jones also argues that the evidence was insufficient to prove that Norris was killed during the commission of another felony. The jury convicted Jones of felony murder based on the underlying felony of torture. The offense of torture is proscribed by MCL 750.85, which provides:

> (1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture....
>
> (2) As used in this section:
>
> (a) "Cruel" means brutal, inhuman, sadistic, or that which torments.
>
> (b) "Custody or physical control" means the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority.
>
> (c) "Great bodily injury" means either of the following:
>
> *(i)* Serious impairment of a body function...
>
> *(ii)* One or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds.
>
> (d) "Severe mental pain or suffering" means a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from any of the following:
>
> *(i)* The intentional infliction or threatened infliction of great bodily injury.
>
> \* \* \*
>
> *(iii)* The threat of imminent death....

First, evidence supports that Jones controlled Norris by "snatching" him from his house and beating him so forcibly that Norris could not escape. Second, Reynolds's testimony described a prolonged assault, during which Jones and Carson repeatedly hit and kicked Norris, called him a "rapist" and "pervert," cussed at him, and struck him

11

> with a metal folding chair and a 2 ½-foot rod. From this, the jury could infer that Jones intended to cause cruel or extreme physical or mental pain and suffering. Lastly, the evidence establishes that Jones actually inflicted great bodily injury on Norris. Norris suffered multiple blunt force traumas, including a fatal neck injury. Accordingly, sufficient evidence supported the predicate felony for Jones's murder conviction, as well as his separate conviction for torture.
>
> The evidence also sufficed to establish Jones's commission of second-degree home invasion.
>
>> Second-degree home invasion requires proof that the defendant entered a dwelling by breaking or entering without the permission of any person in ownership or lawful possession or control of the dwelling and did so with the intent to commit a felony, larceny, or assault therein or committed a felony, larceny, or assault while entering, present in, or exiting the dwelling. [*People v. Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).]
>
> *See also* MCL 750.110a(3). Although Wilson denied at trial that Jones and Carson entered Norris's house, the prosecution impeached this testimony with Wilson's police statement, in which he stated that both men entered the home and removed property. Moreover, Reynolds testified that both men entered Norris's house and removed items, including a vacuum and a microwave. In his police statement, Jones admitted that he went into Norris's house and used his phone as a flashlight. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Jones entered Norris's house without permission, with the intent to commit larceny, and that he committed a larceny while inside.

*Jones*, 2016 WL 5956030, at *3-5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to the murder conviction, the prosecution presented sufficient evidence to establish that petitioner acted with the requisite malicious intent to support his conviction, either as a principal or as an aider and abetter.

12

Kyle Wilson testified that during an initial assault upon the victim, petitioner hit the victim with his fists hard enough to make the victim fall. *See* 1/15/15 Trial Tr., pp. 129-130, ECF No. 9-15, PageID.1220-1221. Petitioner admitted in his police statement that he swung at the man and the others hit him and struck him with a chair during this altercation. *See* 1/27/15 Trial Tr., p. 30, ECF No. 9-20, PageID.1741. Dominique Reynolds testified that during the second assault upon the victim, two men (petitioner and co-defendant Carson, by elimination) grabbed the victim out of his house and hit him with their fists, *see* 1/21/15 Trial Tr., pp. 44-46, ECF No. 9-17, PageID.1421-23, kicked the victim, and struck him with a metal folding chair and a one- to two-inch diameter rod. *Id.* at pp. 46, 60-61, PageID.1423, 1437-1438. While they assaulted the victim, they called him a rapist and a pervert. *Id.* at p. 56, PageID.1433. During the assault, the men took breaks to drink more alcohol and then continued to hit the victim. *Id.* at pp. 57-59, PageID.1424-1436. Reynolds also testified that she attempted to stop the assault, but the perpetrators knocked her off the porch. *Id.* at p. 49, PageID.1426. Petitioner admitted in his police statement that he hit the victim in the face and kicked him once during this altercation. *See* 1/27/15 Trial Tr., p. 31, ECF No. 9-20, PageID.1742. The medical examiner testified that the cause of death was homicide and that the victim died from multiple blunt force trauma to the head with significant injuries to his head, neck, and spinal cord. *See* 1/22/15 Trial Tr., pp. 14-21, ECF No. 9-18, PageID.1534-1542. Given such evidence, particularly the length, severity, and recurring nature of the beating, as well as the extent of the victim's injuries, it was reasonable for the jury to conclude that the petitioner had the intent to do great bodily harm or acted in disregard of the risk that his conduct would result in great bodily harm or death so as to support his first-degree murder conviction.

Second, as to the torture conviction, the prosecution presented sufficient evidence

to establish that petitioner acted with the intent to cause cruel or extreme physical or mental pain so as to support his conviction, as either a principal or as an aider and abettor. Much of the same eyewitness testimony and medical evidence that supports petitioner's murder conviction supports his torture conviction. Petitioner's actions, along with those of the other perpetrators, in grabbing the victim, calling him a pervert and rapist, trapping him on the porch, and repeatedly striking him with fists and other objects and kicking him, resulting in multiple injuries to his head, neck, and spinal cord were sufficient for a reasonable jury to conclude that petitioner engaged in torture.

Third, as to the home invasion conviction, the prosecution presented sufficient evidence to establish that petitioner entered the victim's home without permission and took items from the home so as to support his conviction, either as a principal or as an aider and abettor. Kyle Wilson testified that petitioner entered the victim's home. *See* 1/15/15 Trial Tr., p. 134, ECF No. 9-15, PageID.1225. Dominique Reynolds testified that the woman and two men (petitioner and co-defendant Carson, by elimination) who were assaulting the victim entered the victim's home and exited with several boxes, a vacuum, and a microwave. *See* 1/21/15 Trial Tr., pp. 61-63, ECF 9-17, PageID.1438-1439. Additionally, petitioner admitted in his police statement that he entered the victims' home and used his phone like a flashlight although the victim told them not to go into his home. *See* 1/27/15 Trial Tr., p. 32, ECF No. 9-20, PageID.1743. Given such evidence, a reasonable jury could conclude that petitioner committed second-degree home invasion.

Petitioner challenges the jury's evaluation of the witnesses' credibility and the evidence presented at trial. However, it is for the factfinder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618. The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.

Habeas relief is not warranted on this claim.

### IV. Conclusion

Accordingly,

IT IS SO ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has not made a substantial showing of the denial of any of his constitutional rights.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because any appeal in this matter would be frivolous.

Dated: October 30, 2020　　　　　　　　s/Bernard A. Friedman
Detroit, Michigan　　　　　　　　　　　Bernard A. Friedman
　　　　　　　　　　　　　　　　　　　Senior United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 30, 2020.

Diago Jones, #864511　　　　　　　　s/Johnetta M. Curry-Williams
SAGINAW CORRECTIONAL FACILITY　　Case Manager
9625 PIERCE ROAD
FREELAND, MI 48623